*Held,* by the Court, that the respondent could not recover; that the contract was illegal, the same being prohibited by the ordinances of said city, (*see chapter* 37 *of the revised ordinances of said city,* 1859;) that a person performing services as a public cartman, in the city of New York, without having a license pursuant to the ordinances of said city for such purpose, cannot recover pay for such services, and that the judgment of the marine court must be and thereupon wa reversed.

---

## SUPREME COURT.

ALEXANDER M. C. SMITH, on behalf of himself and others, agt. HENRY WELLS and others.

A plaintiff cannot demand the appointment of a *receiver* of property in which he has *no interest,* although he may have a cause of action for its injury when he formerly owned it.

There is no provision of the Code that allows an answer, or a part thereof, to be stricken out for *inconsistency only.*

When from the whole answer there was not sufficient evidence of the *falsity* of a *general denial* which was asked to be stricken out; but the court ordered it to be made more *definite* and *certain.*

*It seems* that the defendant may, in his answer, *admit specifically* a part of the allegations of the complaint, and *deny generally* the remainder.

*New York Special Term, October,* 1860.

Two motions were made on behalf of the plaintiffs in this action: one to strike out a portion of the defendants' answer, and that certain parts of it be made more definite and certain, or that defendants be required to elect as to certain defences; and the other, for the appointment of a receiver.

The plaintiff, A. M. C. Smith, brought his action on behalf of himself and all others stockholders or associates in the joint stock company, or association known as the "American Express Company," the principal office of which was in the city and state of New York, and which expired on or about the first day of January, 1860. The complaint, after stating the organization of the American Express Company previous to 1850, contained allegations, the substance of which is stated in the following order, to wit: 1. That the articles of association are in the possession and control of the defendants. 2. Stating the style and name of the association, and its duration, ten years from January 1, 1850. 3. The amount of the capital stock of the association, ($175,000;) its division into shares of $100 each; and the mode of transferring the stock. 4. The management of the affairs of the association to be vested in and controlled by seven trustees or directors, chosen by the stockholders—naming seven of the directors who were chosen to continue until others were appointed. 5. Providing for a new election of trustees on the requisition of a majority in amount of the stockholders. 6. Specifying the power and duty of the trustees, or a majority of them. 7. Providing that "in case of disagreement of the trustees in relation to any matter or thing, a majority should control;" and that "no acting trustee should engage, be concerned, or in any way interested in any business or thing detrimental to, or which should interfere with the character, credit, profits, or advancement of the best interests of the association." 8. That in 1853 the capital stock of the association was increased to $750,000, by merging in it another (opposition) express company,

called the United States Express Company, formed in that year by Wm. A. Livingston and others, and as thus modified the association continued as before.

The complaint then alleged that in May, 1854, five (out of seven) of the defendants (naming them) who were then trustees of the American Express Company, in connection with others, organized another express company, called the "United States Express Company," for the purpose of carrying on a similar business in all respects as the American Express Company; that the defendants named were the principal actors in the formation of the said United States Express Company, and took, each, a large amount of the capital stock thereof, which they continued to own and hold; averring that said last mentioned company was organized and intended as a rival company to the former, and was in a great degree, though secretly and fraudulently, under the control and management of the defendants named.

That before and about the time of the sale to the United States Express Company hereafter mentioned, the American Express Company owned and possessed the good will of a valuable and profitable route, known as the Erie railroad division of their business, extending along said railroad from the city of New York to Dunkirk; thence to Toledo, Chicago, Galena, Milwaukee, St. Louis, Cleveland, Cincinnati, and other places; that at the different numerous stopping places along the Erie railroad from New York to Dunkirk, the American Express Company had established, at considerable expense, offices and agencies, with valuable safes and furniture, horses, wagons, &c, at each place, necessary to carry on their business, and had also erected and owned a large warehouse at Elmira, N. Y., worth about $6,000, and owned and possessed other valuable property at different places on said Erie railroad, as well as at the city of New York, connected therewith.

That the good will of the said division of the business, including the real and personal property devoted thereto,

was worth $250,000, being at that time nearly one-half of the property of the company,

That about the first day of May, 1854, the said defendants, Henry Wells, John Butterfield, Johnston Livingston, Wm. G. Fargo, and E. P. Williams, a majority of the trustees or directors of said American Express Company, and falsely, fraudulently, and corruptly acting in concert to use and abuse the powers with which they were vested as a majority of the trustees of that company, and jointly intending to cheat and defraud that company and its stockholders of a valuable portion of the property thereof, in the name of that company, sold, assigned, transferred, and set over to the said United States Express Company, all and singular, the good will of the said Erie railroad division of business aforesaid; and all and singular the real and personal property, with their incidents and appurtenances, for the nominal price of $150,000—$30,000 to be paid in cash, and the balance by the notes of the United States Express Company.

That it was a condition of the sale, agreed to by the respective companies, that their profits should be divided in the ratio of three-fifths to the American and two-fifths to the U. S. companies, for that portion of their route between the city of New York and Dunkirk and Buffalo; and that for that portion of their route west of Dunkirk and Buffalo their profits should be divided equally between them.

That the sale, although consummated in the name of the American Express Company, as one of the parties, was, in reality, the act of the defendants, who had conspired and combined together among themselves to enrich the United States Express Company at the expense of the American company; that there was no necessity for such sale; that it was not designed or intended to benefit the American association; that it was fraudulent on the part of the defendants, and carried through with fraudulent aims and intentions on their part; that it was in express violation of

the articles of association of the American company; that it was prejudicial to the other stockholders of the American company; that it was not based on a full and fair consideration, and that it was in effect a sale from the defendants as trustees, in contravention of the trust, and in disregard of their legal and conventional duty'to themselves as principals and beneficiaries in a rival company.

After alleging that the United States company immediately upon the aforesaid sale to them, took and continued in possession of the property, &c., and had up to the first of January, 1860, drawn on account of their proportion of profits from the moneys of the American company, $290,000, alleged that the notes given for $120,000 of the pretended consideration for said sale ($150,000,) had been paid (if at all,) in no other way than out of moneys claimed and drawn as profits by the United States company, under the terms of the sale.

That the defendants, Henry Wells, John Butterfield, Johnston Livingston, and William G. Fargo, acted as trustees of the American company from the time of the said sale down to its dissolution, January 1, 1860. That immediately after said sale, E. P. Williams resigned as trustee of the American company, and became a trustee or director in the United States company, in order to take charge of and control the interests of the defendants in the latter company, as a part of the scheme of the defendants.

That some short time before the said sale, with a view to the ulterior objects of the defendants, particularly in connection with the said sale, the defendants, in conjunction with others, procured the American company to be shut off, or excluded from the Erie railroad, by the action of the latter company, and at the time of so doing the defendants were engaged in maturing the plans which were consummated in the said sale.

That the Erie railroad conducted themselves the express business of their road from about the 15th of May, 1856,

to about the 15th of August, 1858, excluding the United States company from their road during that period, so far as its business beyond Dunkirk and Buffalo was concerned; during which period the latter company claimed and drew in the ratio above mentioned from the profits of the American company.

That the effect of the said sale to the United States company was and has been greatly to depreciate the value of the stock of the American company; that before that time the said stock paid annual dividends of twenty per cent; and that after that it fell to sixteen, and then to twelve per cent, and finally, in the year 1859, to four per cent.

That before and at the time of the sale the plaintiff was the owner of about 129 shares of the capital stock of the American company, and that down to, and on or about the 27th day of December last (1859) he continued to be and remained the owner of 72 shares thereof.

That the defendants, at the time of the sale, owned and controlled some 400 or 500 shares of the capital stock of the American company, which they sold off at intervals, until, at the time of the dissolution of the latter company, they owned or controlled less than 200 shares.

That the stockholders of the American company, at the time of said sale, were numerous; that they were also numerous at the time of the dissolution of the company on the 1st January, 1860; that they are not all known to the plaintiff, and he believes it would be impracticable to bring them all before the court. That this action is brought in good faith, and without any connivance or collusion with the defendants, or any of them.

That the fraud of the defendants herein before stated, and particularly that of forming the United States company, and making the said sale to them, was not discovered by the plaintiff until on or about the 1st day of January, 1860. That it is impossble to make the American company, as

such, a party to this action, the company having expired or become dissolved by lapse of time as above stated.

The plaintiff demands judgment against the defendants, that the sale made by them as herein above set forth to the United States company, be, as between the plaintiff suing as aforesaid and the defendants, vacated, set aside, and altogether held to be null. That an account be taken, &c., and that the defendants be made individually liable, &c.

The answer of the defendants admitted as true a portion of the allegations of the complaint, those numbered from one to eight inclusive, and some portions of some of 'the subsequent allegations. It then stated (at folio 15) : "And these defendants say that as to each and every other allegation in the complaint contained not herein before admitted, they say that they deny the same." The answer then proceeds to state separate and further defences to the specific allegations of the complaint, among which it is important to state the following (at folios 21 and 22) : " And for a further and separate defence, defendants say that the said American Express Company, first organized, never held any good will or exclusive right over the Erie railroad division, in the complaint mentioned ; that said railroad company at all times refused to give said association any exclusive right for any time to the use of said road for the prosecution of said business, but that on the contrary, before the first day of May, 1854, the said Erie railroad company had notified the said American Express Company that they could not run their express or conduct their said business on said road from and after the first day of May, 1854 ; and that whatever sale was made by them to any person at any time of any of the property of said association, in consequence of their being obliged to relinquish and abandon said route of their business, was made by them for said association, and in the exercise of a sound judgment and discretion by them used and exercised as such trustees, and in good faith under the powers vested in them by the

articles of association, and for a fair and just consideration; and the same has been realized by and divided amongst all the stockholders and associates, the plaintiff receiving his *pro rata* share, dividend, or proportion thereof; and the defendants aver that they have always, in the exercise of their office as such trustees, endeavored to discharge the duties of their office faithfully, and so as to advance the best interests of the said company and their associates."

And as another defence, it was stated that before the dissolution of the said American Express Company, in the complaint mentioned, the said association, for a valuable consideration, duly sold and transferred to an association called the " American Express Company," organized on the day of the termination of the first mentioned association, all the property, assets, claims and demands, rights of action and interests of every name or nature, wheresoever the same might exist, and that by virtue thereof, the said association so last organized succeeded to all the rights, claims, actions and causes of action, property assets and effects of every name and nature belonging to or in which the association first mentioned were interested; that said sale was made in the presence of and without objection on the part of the plaintiff, wherefore the defendants object that the said last named association is a necessary party to this action, and that this action cannot be maintained by this plaintiff. Also, that on the 29th of December, 1859, and before the dissolution of the association, the plaintiff sold out all his interest in said association, and his right and interest in its property and effects to one D. P. Smith, whereby the plaintiff had no interest of any kind or nature in and to any relief claim or demand in the complaint set forth, at the time of the commencement of this action.

    John H. Trapp, *attorney, and* John Graham, *counsel for plaintiff.*

    Van Vorst & Beardslee, *attorneys, and* H. C. Van Vorst, *counsel for defendants.*

LEONARD, J.   The complaint relates to an alleged fraud committed by the defendants as trustees of property in which the plaintiff had an interest several years ago, whereby the defendants have caused an injury to the plaintiff.

The act complained of might have justified the court in appointing a receiver, or removing the defendants from their trust when the offence was committed, and when the plaintiff had an interest in the property.

It appears now, from the answer, that the plaintiff has sold and transferred all his interest in the property which the defendants held as trustees, and which they probably still hold.

His right of action for the injury done to his property, in its value, by the alleged fraud of the defendants, remains however.

The plaintiff cannot demand the appointment of a receiver of property in which he has no interest.

The allegation of the answer is distinct that the plaintiff sold all his shares or interest in the association of which the parties to this action were members in December last. That allegation is not referred to in the affidavit on which the plaintiff's motion for a receiver is founded.

For the purpose of this motion this allegation of the answer must be taken to be true.   On reference to the complaint, folio 25, the fact that the plaintiff's interest in the property of the association terminated last December, is, impliedly, there stated.

The motion for a receiver is therefore denied.

The motion to make the denial contained in the answer, at folio 15, more definite and certain, is granted.

The allegation of the complaint is that the defendants sold the goodwill, as well as the property, at the various stations, &c., of the Erie railroad division.

The hypothetical admission of a sale, at folio 21, of the answer, refers, I think, to the property of this express route belonging to the association, as distinguished from the

" goodwill." The allegation is distinct that the railroad refused to run the express or conduct their business. This proceeding of the railroad destroyed the value of the " goodwill."

Assuming that the defendants have denied that they procured the railroad to make this refusal, it may be that they might then allege that it was for the interest of the American Express Company to sell the stations and the property of the company along the route, which they could no longer use, and that the sale was made in the exercise of sound judgment and discretion. For this reason I arrive at the conclusion that the answer does not afford sufficient internal evidence of the falsity of the denial at folio 15, to warrant an order expunging it on that ground.

There is no provision of the Code that allows an answer, or a part thereof, to be stricken out on the ground of inconsistency only. (*Ostrom* agt. *Bixby*, 9 *How. Pr. R.* 59; *Hollenbeck* agt. *Clow*, 9 *How. Pr. R.* 290.)